Gladstein, Reif & Meginniss LLP
By: Katherine H. Hansen (KH9855)
817 Broadway
New York, New York 10003
(212) 228-7727
khansen@grmny.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
_____

RIDER UNIVERSITY CHAPTER of the AMERICAN
ASSOCIATION OF UNIVERSITY PROFESSORS,

                          Plaintiff,

      against                                                -CV-

RIDER UNIVERSITY,

                          Defendant.                COMPLAINT
_____

## Introduction

1. Plaintiff Rider University Chapter of the American Association of University Professors (AAUP or the Union) brings this action pursuant to section 301 of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185, to compel defendants to proceed to arbitration pursuant to a collective bargaining agreement and to maintain the status quo ante pending arbitration.

## Jurisdiction and Venue

2. This Court has jurisdiction of this action under 29 U.S.C. § 185(a). Venue is appropriate under 29 U.S.C. § 185(c).

**Parties**

3. Defendant Rider University (Rider or Defendant) is a non-profit corporation organized under the laws of the State of New Jersey and maintains its office and principal place of business at 2083 Lawrenceville Rd, Lawrenceville, New Jersey. It is an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 152(2).

4. Plaintiff Union is a labor organization within the meaning of 29 U.S.C. §152(5) and the collective bargaining representative of the faculty, librarians and athletic department staff of Rider University.

**Layoffs**

5. In 1992, Westminster Choir College, located in Princeton, New Jersey, merged with Rider College, becoming part of Rider College but, pursuant to the merger agreement, maintaining a separate identity and programs. In 1994, the merged institution became Rider University. The choir college became Westminster Choir College of Rider University (WCC).

6. On October 31, 2017, Defendant served notices of layoff on the full-time faculty members of WCC. The notices of layoff stated that Defendant had decided to "divest" itself of WCC and its Princeton campus, either by sale to an unidentified "partner" that "intends to operate WCC as a non-profit music school in Princeton," or by "transition to closure." The notices also stated, "Should the transaction [with the unidentified "partner"] become final before the end of the 2017-2018 year, Westminster faculty members would no longer be employed by Rider University as of August 31, 2018."

7. Defendant has insisted that the identity of and negotiations with the "partner" remain secret. However, a representative of Defendant has described the unidentified

"partner" as a Chinese company that operates secondary schools for Chinese students who plan to seek admission to American colleges and universities.

## Collective Bargaining Agreement

8. The Union and Defendant have been parties to a series of collective bargaining agreements for over 40 years. The agreement effective from September 1, 2014, through August 31, 2017, was renewed for another three-year term, with changes that are not material to the issues in this case.

9. Article XV, section A, of the collective bargaining agreement provides in relevant part:

> A. Reasons for Lay-Off
> The University may lay off members of the bargaining unit because of either financial exigency or the demonstrated financial need to eliminate or curtail programs or courses of instruction to protect the well-being of the University.
>
> 1. . . . .
>
> 2. Notice of Lay-Off
> In the event the University determines that a lay-off is ... necessary, the University shall be required to notify the affected bargaining unit member(s) by October 31.

10. Article XV also authorizes the AAUP to refer a dispute concerning proposed layoffs to arbitration and specifies the order of layoffs. The last to be laid off, after all part-time members of the bargaining unit, are the full-time tenured and tenure-track members.

11. Article XXII of the collective bargaining agreement, titled "Grievance and Arbitration Procedure," defines a grievance as "an allegation by the AAUP that there has been a breach, misinterpretation, or improper application of the terms of this Agreement," with specified exceptions not applicable in this matter.

12. Article XXII sets forth a procedure to be followed by the parties in seeking to resolve the grievance, and provides for binding arbitration of unresolved disputes. It also provides for special arbitration procedures set forth elsewhere in the collective bargaining agreement to take precedence over its general provisions. Section C of Article XV ("Lay-Off") sets forth special procedures for arbitration of layoff grievances.

## Violations of the Collective Bargaining Agreement

13. The layoffs noticed by Defendant violate the collective bargaining agreement because they are not justified by any "financial exigency or ... demonstrated financial need to eliminate or curtail programs or courses of instruction to protect the well-being of the University," as required by Article XV, section A.

14. Defendant does not contend that the layoffs are justified by financial exigency, and no such exigency can be shown.

15. Defendant has failed to demonstrate any financial need to eliminate or curtail the WCC programs.

16. None of the financial challenges that Defendant has faced in recent years can reasonably be attributed to WCC.

17. While Rider University as a whole was running deficits in the 2015 and 2016 fiscal years, WCC had substantial net surpluses.

18. Defendant has not made, and cannot make, the showing required by Article XV, section A, to justify layoffs.

19.  The layoffs independently violate the collective bargaining agreement because only full-time tenured or tenure-track faculty were timely served with notice. Part-time faculty were not timely served, and may not be laid off. The noticed layoffs of

full-time faculty therefore violate the order-of-layoff provision of the collective bargaining agreement.

## Procedural History

20. In accordance with the procedure set forth in the collective bargaining agreement for grievances concerning layoffs, the parties met to discuss the layoffs on November 21, 2017.

21. At the November 21 grievance meeting, the Union representative inquired concerning the date of the sale of WCC. Defendant's representative responded that he expected that they would have a contract sometime this year, but that the parties had not exchanged term sheets yet. He said that he could not be more specific because he was not directly involved in the dealings with the prospective buyer.

22. The Union representative asked what would happen if the grievance went to arbitration and the arbitrator ruled that the layoffs were improper and could not be carried out. Defendant's representative stated that he could not answer that question.

23. The Union representative pointed out that WCC full-time faculty had been served with the contractually required notice but part-time faculty had not, and pointed out the collective bargaining agreement's order-of-layoff provision and requirement that timely notice be given to "all affected bargaining unit member(s)." He asked how Defendant could carry out the noticed layoffs of full-time faculty in a manner consistent with the collective bargaining agreement. Defendant's representative stated that he would get back to the Union concerning that question.

24. The meeting ended without an agreement concerning the layoffs.

25. The following day, November 22, 2017, consistent with the collective bargaining agreement, the Union served upon Defendant and submitted to the

American Arbitration Association a demand for arbitration of the grievance concerning improper layoffs.

26. The arbitrator has offered the next hearing dates that he has available, March 29 and May 2, 2018. The Union has accepted both of those dates, with a request to be notified of any earlier dates that become available. Counsel for Defendant has stated that he is confirming with Defendant "that those dates will work on our end," but has not yet communicated further concerning the dates.

### The Need for Interim Injunctive Relief

27. If the arbitrator finds that the layoffs violate the collective bargaining agreement, the standard remedy would be to order Defendant to rescind the layoffs, and if any layoffs have already been effectuated, to reinstate the laid-off employees to their former positions of employment with back pay and benefits.

28. The programs in which the WCC faculty teach do not exist elsewhere at Rider.

29. The undisclosed "partner" is not a party to the arbitration agreement.

30. Therefore, rescission of the layoffs and reinstatement will be impossible for the arbitrator to effectively order if Defendant has sold or closed WCC.

31. After filing the demand for arbitration, the Union sought to invoke the expedited arbitration provision of the collective bargaining agreement, which includes a requirement that Defendant maintain the status quo for 45 days. Defendant insisted that the provision does not apply to arbitration concerning layoffs, and that it is free to sell WCC at any time.

32. On December 20, 2017, after the Union advised Defendant that it was prepared to initiate legal action to preserve the arbitrator's ability to order an adequate

remedy for the improper layoffs, the parties entered into an agreement to maintain the status quo pending arbitration through January 31, 2018.

33. Defendant has refused to agree to maintain the status quo for any period after January 31, 2018.

34. If Defendant is not restrained, it may enter into an agreement to sell WCC at any time after January 31, 2018.

35. If Defendant enters into an agreement to sell WCC, the arbitrator will be unable to order an adequate remedy for Defendant's improper layoffs, and the Union and its affected members will be irreparably harmed.

WHEREFORE, it is respectfully requested that the Court grant an order

(i) requiring Defendant to maintain the status quo pending arbitration;

(ii) enjoining Defendant from entering into any agreement relating to the sale or closure of Westminster Choir College or taking any irreversible step toward either of those ends before the arbitrator has rendered a final award and the awarded relief has been effectuated;

(iii) awarding the Union its costs and expenses, including reasonable attorneys fees, incurred in connection with this matter; and

(iv) such other and further relief as the Court deems just and proper.

Dated: January 9, 2018

GLADSTEIN, REIF & MEGINNISS LLP

By:     s/ Katherine H. Hansen
       Katherine H. Hansen (KH9855)

817 Broadway
New York, New York 10003
(212) 228-7727
khansen@grmny.com

Attorneys for Plaintiff